Garnett **SEAY** and Billy Gaddis, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 14955.

United States Court of Appeals Fifth Circuit.

Dec. 14, 1954.

Rehearing Denied Jan. 10, 1955.

Frank B. Stow, Gainesville, Ga., for appellants.

James W. Dorsey, U. S. Atty., John W. Stokes, Harvey H. Tisinger, Asst. U. S. Attys., Atlanta, Ga., for appellee.

Before HOLMES, BORAH, and RUS-SELL, Circuit Judges.

HOLMES, Circuit Judge.

Appellants, along with three co-defendants, were indicted for a conspiracy to

violate the laws of the United States pertaining to the unlawful and fraudulent manufacture, possession, transportation, removal, concealment, sale, and distribution of non-tax-paid distilled spirits. Sections 2803, 2810, 2833, 2834, and 3321 of Title 26 of the United States Code. Two of the defendants entered pleas of guilty, and furnished most of the evidence against the appellants. Appellants, Garnett Seay and Billy Gaddis, were each convicted on the conspiracy count, and Gaddis was convicted also upon a substantive count of working in a distillery for the production of spirituous liquors, upon which no sign bearing the words "Registered Distillery" was placed and kept as required by law, in violation of Section 2831, Title 26, U.S.C.

The evidence shows that, in June or July, 1952, the appellants approached Richard Fricks and asked him to make some liquor for them. Pursuant to this conversation it was agreed that Seay would furnish the sugar and distillery equipment, and that Fricks would furnish one helper. Seay and Fricks were to divide the profits. The night following said conversation, Seay delivered 4500 pounds of sugar to Fricks' house, and subsequently delivered the distillery apparatus. Fricks hired one Arnold Smith to aid in the operation of the distillery, which was erected 300 yards from Smith's house, with all of the co-conspirators except Seay performing the actual labor. Thereafter sugar was moved from Fricks' house to the distillery, where the operation of the distillery extended over a period of two weeks. The finished product was stored in Smith's house until it was removed at various times by Gaddis, Seay, and others. About 400 gallons of liquor were manufactured at the distillery before it was discovered and raided by federal agents.

The indictment charged that the conspiracy commenced on or about June 1, 1952, and continued until August 1, 1952. After pleading guilty and testifying for the prosecution as to facts relating to the conspiracy, Fricks, on cross-examination, stated that the illegal operation took place in September or October. After the court had recessed and reconvened, he changed his testimony, stating that he had met Seay in June. Fricks' wife testified that, during the recess, the prosecuting attorney had told her that there had been some confusion in Fricks' testimony as to the dates of the conspiracy; that while talking to her, Fricks had come up and the prosecuting attorney had said to him: "You got a little out of order, my boy, on your dates, because you didn't remember." When the above facts were brought out, the appellants made a motion for a mistrial based upon the violation of the rule of separation of witnesses. The court overruled the motion, but instructed the jury, which had heard all of the testimony, that it could consider what had happened in determining the credibility of the witnesses.

Two errors are assigned on appeal. First, appellants contend that the conflicts in the evidence were of such magnitude and materiality as to be wholly irreconcilable with the verdict. We think that the evidence does not present any more than the usual conflicts, and that the jury resolved them against the appellants. The other point raised by appellants is that the court erred in not granting the motion for a mistrial. After the motion for mistrial was made, the court heard argument and carefully instructed the jury to the effect that the rule of exclusion of witnesses had been invoked, and that it was improper for an attorney to tell one witness what the preceding witness had testified. The court then instructed the jury to consider all the circumstances in determining just what weight and credit it would give to the testimony of Mr. and Mrs. Fricks.

We agree with the court below that the incident went only to the credibility of the witnesses; and, since the jury was fully instructed upon that point, we think that it did not constitute re-

versible error. Furthermore, the date of the conspiracy was amply proven by other evidence. Accordingly, the judgment appealed from is affirmed.

Affirmed.